Lewis *v.* Trickey.

LEWIS *vs.* TRICKEY.

Where one person performs labor for another, the law presumes a request, and a promise to pay what such labor is reasonably worth, unless it is understood that it is to be performed gratuitously, or it is performed under circumstances which repel the presumption of a promise that compensation shall be made.

Where an employer agrees to render an equivalent for services performed, it is no defense to an action against him to recover compensation, that he agreed to pay some third person who has no legal claim to the service, or right to the compensation; especially where the defendant does not show that he has in fact paid such third person.

When payment for labor is to be made, the law will give it to him who performs the labor, unless some other person can show a better title.

The value of services may be proved by the opinions of witnesses who are acquainted with the value of labor in the vicinity.

But a defendant cannot prove by witnesses what the plaintiff's services were worth over and above his board, clothing, &c. furnished by the defendant, without proving or offering to prove that the witnesses knew the quantity or value of either item assumed by the question to have been furnished.

Neither can the defendant be permitted to ask a witness how much *under all the circumstances*, were the plaintiff's services worth, over his board.

APPEAL by the defendant from a judgment entered at a special term, upon the report of referees. The action was for work and labor, done upon the farm of the defendant from June, 1839, to November, 1844, by the plaintiff, at $12 per month. The answer denied the indebtedness alleged in the complaint, and set up as a defense that the plaintiff, some time

in the year 1839, then being an indented apprentice to Peter
Townsend, under the statutes of this state, was sent by him to
the farm of the said Peter Townsend, in the town of Bristol,
which the defendant worked for the said Peter Townsend, to
learn the trade and science of farming ; and continued to reside
with the defendant on the said farm until the latter part of the
year 1843 ; that while he so resided with the defendant on the said
farm he was furnished with board, clothing, schooling and pock-
et money ; and that whatever services were rendered by him,
during his stay on said farm, were rendered and performed by
him for the said Peter Townsend as his indentured apprentice ;
and that none of the said labor or services were performed by
the plaintiff, as alleged in the complaint, within six years next
before the commencement of this suit.     The defendant also
claimed that the plaintiff was justly indebted to him, in the
sum of seven hundred dollars over and above all offsets and pay-
ments, for board, clothing, schooling, one cow, one yoke of oxen,
farming stock and farming implements, furnished by the de-
fendant to the plaintiff at his request.     The answer was put in
issue by a reply.

On the trial before the referees, after the plaintiff had proved
the performance of the services, as charged in the complaint,
his counsel asked a witness " what were the services worth, in
your judgment ?"     This question was objected to by the defend-
ant's counsel, and the objection was overruled by the referees,
and the defendant's counsel excepted.     The witness answered,
" I should think his services were worth about $12 for the last
two years he worked there, for the third year about $10 per
month, for the first and second years about $8 per month."

All the evidence given on the part of the plaintiff in regard
to the value of his services by the month, was objected to by
the defendant's counsel, at the time it was offered, because no
foundation had been laid for such proof, and also because it did
not appear that the plaintiff had ever worked for defendant in
the capacity of a hired man, by the month or otherwise.     The
said objections were overruled by the referees, and the evidence
admitted, and the defendant's counsel excepted.     The plaintiff

Lewis *v.* Trickey.

rested his case, and the defendant's counsel moved for a nonsuit, on the ground that there was no proof that the defendant ever employed the plaintiff, or promised to pay him any thing for his services, or that they were, in fact, of any value. Motion denied by the referees, and the defendant's counsel excepted. A witness for the defendant was asked the question, "what, in your opinion, were the services of the plaintiff worth to the defendant the first year, under the circumstances he was placed in, besides his board?" Objected to by plaintiff's counsel. Objection sustained and question overruled, and the defendant's counsel excepted. Question. "What in your opinion were his services worth over and above his board during the whole time the plaintiff was with the defendant?" Objected to by the plaintiff's counsel. Objection sustained, and the defendant's counsel excepted.

The referees, by their report, found that the plaintiff lived with and worked for the defendant from the middle of June, 1839, to the middle of November, 1844, in all, five years and five months. That the plaintiff and defendant from the beginning to the end of said time believed, and acted on the belief, that the plaintiff was the apprentice regularly bound, of one Peter Townsend, by whom the plaintiff was placed in the service of the defendant. That during all said time the plaintiff was a minor. That in 1837 an indenture of apprenticeship, purporting to bind the plaintiff to said Peter Townsend, was executed within this state, by the plaintiff, by said Townsend, and by the maternal grandfather of the plaintiff, with whom the plaintiff was then and had been living for about nine years. That the plaintiff so lived with said grandfather with the knowledge of his mother, who was then and is yet living. That the plaintiff was born out of wedlock, and that his mother did not execute any consent to said mentioned indenture. And they found as matter of law, that said indenture was not made and executed according to the statute, was illegal, and of no validity. They found as matter of fact, that the plaintiff's labor during the period he worked for the defendant was of the value of $351. That during said period, the defendant fur-

nished the plaintiff with board, clothing, schooling, a cow, and various articles, to the value in all of $284. And they reported that there was due the plaintiff from the defendant, $67, with interest from November 12th, 1844; for which sum, with interest and costs, judgment was rendered in favor of the plaintiff.

*James C. Smith,* for the plaintiff.

*S. V. R. Mallory,* for the defendant.

*By the Court,* JOHNSON, J. Where one person performs labor for another, the law presumes a request, and a promise to pay what such labor is reasonably worth, unless it is understood that it is to be performed gratuitously, or if it is performed under circumstances which repel the presumption of a promise, that compensation shall be made. In this case it was understood that the defendant was to make compensation for the plaintiff's services. Townsend, who claimed the plaintiff as his apprentice at the time he went into the defendant's service, expressly testifies that he required an equivalent from the defendant for the plaintiff's services, in making improvements upon the farm, such as fencing, clearing land and the like. The defendant then occupied the farm as the tenant of Townsend, working it on shares. There being an express agreement or understanding that compensation for the services was to be made, the only question that can possibly arise as to the right of action, is whether the plaintiff can maintain it for the services thus rendered. It does not appear from the evidence that the defendant has ever made the compensation agreed upon, to Townsend, so that the case is relieved from all embarrassment on that score. And indeed it is difficult to see how Townsend ever had any right to demand or receive the equivalent stipulated for. His claim rested upon the indenture of apprenticeship alone, and that not having been made or consented to by any authorized person, was entirely void. (2 *R. S.* 154, §§ 1, 2, 3.) The plaintiff's grandfather, who had brought

him up from infancy, and who, as appears from the case, had formerly stood *in loco parentis*, could make no claim, as he had previously relinquished voluntarily all claim to the services. And the mother, although living at the time of the trial, must be presumed from the evidence, to have relinquished all her claims to control either the plaintiff's person or his earnings, many years previous to the time when the services in question were rendered. For aught that appears therefore, the plaintiff is the only person who has any legal claim to his own earnings. This case steers entirely clear of the cases of *Williams* v. *Finch*, (2 *Barb. S. C. R.* 208;) *Williams* v. *Hutchinson*, (3 *Comst.* 312;) *Livingston* v. *Ackeston*, (5 *Cowen*, 531,) and the other cases cited by the defendant's counsel. Those cases all turn upon the fact, that the services for which compensation was claimed, were from the very nature of the case to be rendered without compensation, and therefore no legal liability to pay was ever incurred. Not so here. The plaintiff was not the defendant's apprentice, but his hired servant. The defendant expected and agreed to render an equivalent for the services, and it is no answer for him to say that he agreed to pay some person who has no legal claim to the service or the compensation ; especially as he does not show that he has paid any one. Where payment is to be made, the law will give it to him who performs the labor, unless some other person can show a better title.

The referees decided correctly in allowing the plaintiff to prove the value of his services by the opinions of witnesses who were acquainted with the value of labor in the vicinity. They also decided correctly, I think, in rejecting the evidence on the same subject offered by the defendant. There is no such difficulty in reconciling the decisions as the defendant's counsel seems to suppose. The defendant offered to prove by his witnesses what the plaintiff's services were worth over and above his board, clothing and schooling furnished by the defendant, without proving or offering to prove that the witnesses knew the quantity or value of either item assumed by the question to have been furnished. This, as the referees properly suggest,

in making their decision, would be putting the witness in their place and making him judge of the entire case. They held that the defendant might prove the value of the whole on each side. Of the same character, and liable to the same objections, is the evidence offered in this form : How much under *all the circumstances* were the plaintiff's services worth over his board? The form of the question implies the existence of some modifying or qualifying circumstances, which the witness might take into the account, and pass upon, instead of disclosing them in the evidence for the referees to pass upon.

There was, in my judgment, no error committed at the trial, nor in the conclusions of law, upon the facts established, and the judgment should be affirmed.

[CAYUGA GENERAL TERM, June 4, 1855. *Selden, T. R. Strong* and *Johnson,* Justices.]